468 So.2d 1310 (1985)
DEPARTMENT OF CORRECTIONS
v.
Kenneth James PICKENS.
No. 84 CA 0258.
Court of Appeal of Louisiana, First Circuit.
April 16, 1985.
*1311 Jean G. Ray, Staff Atty., Dept. of Justice, Corrections Section, Baton Rouge, for appellant.
Kenneth Pickens, in pro. per.
Robert R. Boland, Jr., Civil Service Legal Counsel, Dept. of State Civil Service, Baton Rouge, for Herbert L. Sumrall.
Before WATKINS, CRAIN and ALFORD, JJ.
CRAIN, Judge.
This is an appeal from a decision by the State Civil Service Commission holding that the Department of Corrections, Louisiana State Penitentiary (hereinafter referred to as Department of Corrections) failed to give proper notice of termination to employee, Kenneth Pickens.
Mr. Pickens was employed by the Department of Corrections at the Louisiana State Penitentiary as a Corrections Security Officer II, on permanent status. On February 17, 1983, Assistant Warden Peggi Gresham handed Mr. Pickens a copy of an "Employee Rule Violations Report". The report alleged that on February 17, 1983, at 4:30 a.m., Pickens signed the check-out roster at Camp H without verifying his count. He signed for sixteen prisoners when in fact he had only fifteen. The action recommended was immediate verbal suspension pending termination. Pickens was then verbally suspended. The report stated in bold print: "THIS IS A RECOMMENDATION OF DISCIPLINARY ACTION PENDING APPROVAL FROM THE OFFICE OF THE SECRETARY, FINAL DISPOSITION OF THIS MATTER WILL BE FORTHCOMING BY LETTER FROM THE SECRETARY OF CORRECTIONS OR HIS DESIGNEE!" The address on the report was listed as Kenneth Pickens, Sgt., Route 6, Box BM 22, Opelousas, Louisiana. At that time Pickens did not inform Gresham that the given address was incorrect.
Pickens had previously been authorized military leave for the dates February 21, 1983, through March 22, 1983. On February 21, 1983, Pickens was to report with his military reserve unit for military exercises in Okinawa. On March 3, 1983, a letter of termination, dated March 2, 1983, was hand delivered, as instructed, to Pickens' mother (Willie Mae Pickens) and sister, at their home, at Route 6, Box BM 22, Henry Drive in Opelousas. Willie Mae Pickens agreed to sign for and accept the letter addressed to her son and was told of the import of its contents. She then told the officers that her son was presently overseas on military maneuvers and that she would contact Kenneth Pickens' wife and tell her that should appellee call her from overseas, he was to call his mother so that she could tell him about the letter. Approximately one week later, Pickens called his mother and was informed of the contents of the letter. He physically received the termination letter on March 23, 1983, upon returning from Okinawa.
The termination letter of March 2, 1983, stated that Pickens was to be removed from his position effective March 3, 1983. It adequately specified the reasons for termination and stated that Pickens could appeal the termination within thirty days. No issue is raised as to the adequacy of notice through the contents of the letter.
On March 31, 1983, Pickens filed a notice of appeal of his termination in which he raised the issue that he did not receive notice on or prior to the effective date of termination in violation of Civil Service *1312 Rule 12.3. A referee was appointed by the Civil Service Commission and a public hearing was held on June 22, 1983, which was limited to the issue of whether Pickens received notice of termination in compliance with Civil Service Rule 12.3. The Commission concluded as a matter of law, that Civil Service Rule 12.3 applies in every case of removal of a permanent employee; that a written statement must be furnished to the employee giving him notice of the contemplated action either prior to or at the time of removal; and that Civil Service Rule 12.3(b)(1) and (2) dictates the method by which the employee is deemed to have received notice. These provisions were found to be mandatory, requiring strict construction in favor of the employee. Further, it was found that it was the responsibility of the Department of Corrections to strictly comply with the methods of service detailed in this rule and that since the Department of Corrections chose to manually deliver the written notice of termination, Civil Service Rule 12.3(b)(1) applied requiring manual delivery of the written statement to Pickens' domicile.
The Commission determined that from November 1982 to the present Pickens' domicile was 952 East Leo Street, not Henry Drive. Since the written statement was not delivered to Pickens' domicile, it was concluded that the termination notice was not furnished to Pickens prior to or at the time the action was taken. In addition, the Commission found that the officers who delivered the notice were not in good faith compliance with the Rules. Pickens' appeal was granted and he was ordered reinstated to his former position.
The Department of Corrections has appealed the final decision of the Commission and alleges that the Commission:
1. Erred in finding that Pickens' domicile on March 3, 1983, was at 952 East Leo Street, Opelousas, Louisiana;
2. Erred in concluding that the termination notice was not delivered to Pickens or to any resident of his domicile;
3. Erred in concluding that the Department of Corrections' efforts in this matter did not amount to good faith compliance with Civil Service Rules; and
4. Erred in concluding that Pickens was not furnished the termination notice at or prior to the time the action was taken.
Rules of the State Civil Service Commission have the force and effect of law. La. Const. art. 10, § 10(A)(4). Decisions of the Commission in all removal and disciplinary cases are subject to review by the appellate courts on any question of law or fact. La. Const. art. 10, § 12.
Civil Service Rule 12.3(a) and (b) reads as follows:
(a) In every case of removal, demotion, or reduction in pay for cause of a permanent employee, the appointing authority or his authorized agent shall:
1. Furnish to the employee at the time such action is taken, or prior thereto, a statement in writing giving detailed reasons for action.
. . . . .
(b) A written statement to which reference is made in the preceding paragraph shall be deemed furnished to the employee
1. Upon actual receipt by, or manual delivery to, the employee or to any resident of suitable age and discretion of the employee's domicile, or
2. On the seventh day subsequent to the day on which an appointing authority establishes that it was deposited in the United States Mail, with proper postage affixed, and addressed to the employee at his last known address as furnished to the appointing authority at the time of employment, or as changed by the employee in writing.
The issue raised in the first, second and fourth assignments of error is whether Pickens' domicile changed to East Leo Street after he married in November, 1982. If Pickens' domicile did not change, then manual delivery to Willie Mae Pickens at Henry Drive complied with Civil Service Rule 12.3(b)(1).
*1313 The term "domicile" is generally defined as "that place where a man has his true, fixed, and permanent home and principal establishment, and to which whenever he is absent he has the intention of returning." BLACK's LAW DICTIONARY, 435 (5th ed. 1979). The domicile of a person is in the parish of his habitual residence. La. C.C. art. 38. It is uncontested that prior to November, 1982, Pickens' domicile was on Henry Drive where he resided with his mother; and that prior to November, 1982, he spent some weekends on East Leo Street while still domiciled at Henry Drive. It is also uncontested that Pickens married in November, 1982, and resided on East Leo Street from that time to the present.
Where a party seeks to show a change in domicile he must prove the establishment of a new domicile coupled with the intention to abandon the former domicile in favor of the new domicile. Harrison v. Commission Council of Bogalusa, 169 So.2d 159 (La.App. 1st Cir.1964). "A man and wife are presumed to have the same domicile." Messer v. London, 438 So.2d 546, 547 (La.1983). This presumption may be rebutted by proof of contrary intent. Robinson v. Standard Oil Co. of Louisiana, 194 La. 904, 195 So. 351 (1940). Such issues are to be determined by the trier of fact based on the facts and circumstances of each individual case. Harrison, 169 So.2d at 163. Both Pickens and his mother testified to his change of domicile from Henry Drive to East Leo Street upon his marriage in November, 1982. The Commission factually determined that Pickens' domicile from November, 1982, until the present was East Leo Street.
The standard of appellate review for appeals from decisions of the Commission is the same as for cases arising from the trial courts. Allen v. DHHR, Ruston State School, 426 So.2d 234 (La.App. 1st Cir.1983). Findings of fact made by the Commission should not be disturbed by an appellate court unless clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1979). We find no manifest error in the finding of the Commission that from November, 1982, Pickens' domicile was 952 East Leo Street.
Appellant urges that Civil Service Rule 12.3(b)(1) and (2) be read in pari materia and construed so that manual delivery to the last known address of the employee is equivalent to manual delivery to the domicile of the employee.
Civil Service Rules should be construed according to general methods of legislative interpretation. Sanders v. Department of Health and Human Resources, 388 So.2d 768 (La.1980), on remand, 394 So.2d 629 (La.App. 1st Cir.1980), cert. denied, 399 So.2d 602 (La.1981). Laws in pari materia should be construed in reference to each other; what is clear in one may be used to explain the ambiguities in another. La.C.C. art. 17. When a law is not ambiguous, its letter should not be disregarded under the pretext of pursuing its spirit. La.R.S. 1:4. A law (Civil Service Rule) should be interpreted in a manner which will give it the meaning intended by the legislature. In Bunch v. Town of St. Francisville, 446 So.2d 1357, 1360 (La.App. 1st Cir.1984) this court stated:
It is presumed that every word, sentence or provision in the law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were used. Conversely, it will not be presumed that the lawmaker inserted idle, meaningless or superfluous language in the law or that it intended for any part or provision of the law to be meaningless, redundant or useless.
The term "domicile" has a separate and distinct meaning from residence or last known address. Harrison, 169 So.2d at 162. In addition, the legislature specifically defined domicile in La.C.C. art. 38. We hold that Civil Service Rule 12.3(b)(1) and (2) is not ambiguous, thus, sections (b)(1) and (2) should not be read interchangeably.
In the third assignment of error, appellant contends that the Commission erred in finding that the Department of Corrections was not in good faith compliance with the Rules. Appellant argues that Pickens had the responsibility to update *1314 his address on file at Louisiana State Penitentiary. The record adequately supports the finding of the Commission that the officers did not even minimally comply with the Rules. They did not ask Willie Mae Pickens whether her son in fact lived at that address, nor did they make further inquiries after being placed on notice by Willie Mae Pickens that appellee was married.
So long as state civil service rules are reasonable and not in violation of basic constitutional rights, they must be enforced by the courts. Sutton v. Department of Public Safety, Division of State Police, 340 So.2d 1092 (La.App. 1st Cir. 1976). Among these is the basic constitutional right to due process which requires sufficient notice and adequate opportunity to be heard. State Civil Service Rule 12.3(b)(1) and (2) distinctly prescribes the manner in which an employee is deemed to have received sufficient notice of a pending action. Civil Service Rule 12.3(a) and (b) is phrased in the imperative. A statute, though phrased in the imperative may be given directory meaning. Sanders, 388 So.2d at 770. The interpretation of a statute as directory or mandatory depends upon legislative intent. If noncompliance would frustrate the statutory plan then the statute is mandatory. Shelton v. Southeastern Louisiana University, 431 So.2d 437 (La.App. 1st Cir.1983). The purpose of civil service rules is to promote the merit system, to guarantee the security and welfare of public service, and to protect public career employees from discrimination. Sanders, 388 So.2d at 771. The intent of Civil Service Rule 12.3(a)(1), and (b)(1) and (2) is to provide an employee with prospective or concurrent notice of termination or decrease in pay. See Department of Health and Human Resources, Office of Family Security v. Perry, 423 So.2d 1266 (La.App. 1st Cir.1983). We find that noncompliance with these rules would potentially result in lack of notice to an employee of an impending disciplinary or termination proceeding. Lack of proper notice to the civil service employee would certainly frustrate the statutory purpose of the Rules. We hold that strict compliance with Civil Service Rule 12.3(a)(1), (b)(1) and (b)(2) is mandatory. Therefore, we affirm the Commission's ruling that Pickens did not receive adequate termination notice prior to or at the time the action was taken as required by Civil Service Rule 12.3(a)(1), (b)(1) and (b)(2).
AFFIRMED.